Jane Rocio Evans
P.O. Box 424886
San Francisco, CA 94142

FILED

UNITED STATES DISTRICT COURT    JUN    2 2008

NORTHEN DISTRICT OF CALIFORNIA RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

JANE ROCIO EVANS,

    Plaintiff,

No. C 08-0894 PHJ

**REQUEST TO VACATE
ORDER TO DISMISS
COMPLAINT**

    V.

WALDEN HOUSE, INC.,

    Defendant

    I am respectfully requesting that this Judge accept this request, even though at the

time of submission it will be June 2, 2008. I attempted to get attorney consultation last

weekend, but the attorney service from legal Aid at the library was closed due to the

Memorial day weekend, and I did not clearly understand legally the last half of the

second page I received concerning;" The basis of the Retaliation claim is not altogether

clear." I now have a much clearer understanding after attorney consultation yesterday

and can now give more evidence and address this matter much more clearly. Plaintiff still

at this time cannot afford to hire an attorney as she is still currently recovering

financially from being laid off work. Plaintiff does did not have the knowledge

to understand the type of evidence needed to be submitted with the original complaint.

Regards the 2nd page received, Plaintiff states that the EEOC determined on the August

2006 letter given to Plaintiff that based upon their investigation,' The EEOC is unable

conclude that the information obtained establishes violations of statutes." **EXHIBIT 18:**

E-mail sent o Plaintiff from Melinda Tuazon, and Plaintiff's response to this e-mail. In e-

mail, Plaintiff states that both Michel Smith and David Pereki, both Caucasian and

having the same job title as Plaintiff, Dual Diagnosis Therapist, and both having
engaged in protected activity, complained about Gehr
similar job duties as Plaintiff, both ~~Whistleblowed after Plaintiff did~~ in the spring of
complained about Gehr
2005. Both ~~whistleblowed~~ regarding Frank Gehr to Larr y Nelson, Walden House

Manager. Nelson took notes. Both were not Terminated and/or Locked out of

Walden House, and the only variable that is any different in this case

is that Plaintiff is Mexican and Smith and Pereki are Caucasian. Thus Plaintiff states

that her case does fall under Whistleblowing and also under a TITLE VII violation,

in particular her Lock out from Walden House due to racial discrimination and

Retaliation for Whistleblowing. Ms. Zaslove is Caucasian.  She was Supervisor to

Smith and Pereki. Another reasonable hypothesis that racially discriminatory

Differential treatment occurred from Ms. Zalsove towards Plaintiff is that Mr. Pereki

most likely obtained a professional job related reference from Ms. Zaslove, as he

resigned from Walden House and became employed at a prison.  Plaintiff never

received a professional reference from Ms. Zalsove and thus has suffered

career endangerment, particularly in being able to procure other jobs, due to

this lack of reference.

**EXHIBIT 19:** evaluation from Walden House, rating Plaintiff as near superior as
 regards her work performance. Evaluation written by Gehr, before Plaintiff
whistleblowed on Gehr regarding his breaking CPS employment law.

Plaintiff has serious concerns that not only Ms. Zaslove authorized her Termination,
since she is Plaintiff's Hiring Supervisor, but that she protected Smith as regards his
whistleblowing activity as he is Caucasian and actively failed to protect Plaintiff as
regards her Whistleblowing activity, Zaslove's racially discriminatory reason being
that Plaintiff is Mexican. Plaintiff has cause to believe that Zaslove knew about
Plaintiff's Termination at least two months before it occurred as she stated in a June
meeting with Plaintiff, " I am not your Supervisor.' The Termination thus appears to
have been planned and calculated.  Ms Zaslove failed in her duty toward Plaintiff to
warn her about Defendant's plans to Terminate Plaintiff. She did not give Plaintiff a
referral to EEOC at this time. Smith is a witness that Plaintiff had this meeting with
Zaslove.  Noga, Intern, is also a witness that Plaintiff had meeting with Zaslove, as
Noga was meeting with Zaslove and Plaintiff for 20 minutes before Plaintiff met
with Zaslove. Glo Wright, of American Indian race, Dual Diagnosis Therapist,
whistleblowed to Larry Nelson regarding Gehr, at around the same time Smith and
Pereki whistleblowed. Wright was also not Terminated, the reason being
because Hightower, her Supervisor, cooperated with his legal duty as her
Supervisor and did everything possible to protect and advocate for Wright with
Mardell Gavriel, his Supervisor. Wright experienced racial discrimination, her

Discrimination based on American Indian, Title VII status that occurred from Gehr.

Gehr retaliated against Wright by attempting to get Wright 'written up,' for

unintentionally forgetting to pick up a 5150 pager. Hightower was able to

successfully to get the write up reduced to verbal warning. **EXHIBIT 20:** Disciplinary

Policy from Defendant, which verifies that Walden House is not an at will organization

and has a strong disciplinary policy, including being placed on Probation before

termination occurs. Even had Insubordination occurred, which it did not, Defendant

was aware that there was a Disciplinary policy in place and could have given Plaintiff

verbal warning or a write up instead of mailing a Termination letter, without a

reason given on letter.

**EXHIBIT 21:** Termination letter mailed from Walden House. Attorney Rubinoff

stated to Plaintiff that a Lock out had occurred after reading Termination letter. Even

had Zaslove or Gavriel believed that Insubordination had occurred, they were

fully aware that the Disciplinary policy was being violated and neither one of them

did anything to stop it. Thus Plaintiff's Lock out was Intentional on both their parts,

as Zaslove and Gavriel authorized it. Witness Jonas P. also communicated to

Plaintiff that Debbie Caruso, Defendant manager, also knew about these events

beforehand. 'She has a big voice in the organization and she could have done

something to stop it,' Jonas communicated to Plaintiff. Jonas also communicated

Plaintiff that he was forced to resign from Walden House. Ms Dorn communicated to

Plaintiff in a meeting with her in the spring of 2005, 'you don't have a

warning or anything on your record,' when Plaintiff expressed concerns about

possibly being retaliated against concerning her whistleblowing to the Board

of Behavioral Sciences and Board of Psychology regarding Gehr. Plaintiff showed

Ms. Dorn a certified mail receipt verifying that she had whistleblowed regarding Gehr

to this Board regarding him breaking CPS employee law by disciplining her

regarding the making of a CPS report, which was Plaintiff's legal duty to make

Plaintiff's termination thus definitely falls under a TITLE VII violation, as defined

on page 2 of letter mailed to her regarding order to dismiss complaint.

Gavriel's retaliation response to Plaintiff's whistleblowing regarding Gehr

includes Ms. Gavriel authorizing Walden House manager, timothy O'Neill, to audit

Plaintiff's Medi-Cal charts. This knowledge of racially discriminatory auditing by

O'Neill, authorized by Gavriel, was communicated to Plaintiff by Hightower shortly

before her Lock out from Walden House. As Plaintiff's work performance was

excellent at the time, the auditing was racially discriminatory and also retaliation for

whistleblowing. Plaintiff also has good cause to believe that Gavriel also authorized

REACH program therapist's Leroy Watt's charts to be audited, as Plaintiff witnessed

a Posttraumatic stress symptom of" hypervigilance" in African American

Therapist Leroy Watts, regarding his charts, around the time of her Lock out from

Walden House. He was very quickly filing notes in his charts, not stopping this

when she was having conservation with him at one point. **EXHIBIT 22 (a):** E-

sent from Tuazon to Plaintiff on June 12, 2006. Tuazon states that the EEOC was not

allowed to initiate contact with Hightower in order to contact him as a

because he is a Walden House manager and they could not do so without

authorization from

Walden House attorneys, as he is authorized to speak on behalf of Walden House.

**EXHIBIT** 22(b): E-mail sent to Plaintiff from Tuazon, requesting a meeting with

Plaintiff on November 3, 2005. Plaintiff attended this meeting, brought additional

evidence to meeting with Tuazon, and read Defendant's statement regarding EEOC

Charge.

**EXHIBIT 22(C):** Letter sent via Certified mail, which the EEOC received,

on July 1, 2006. Plaintiff submitted more evidence to the EEOC. Thus, the EEOC

received much evidence from Plaintiff that a Title VII violation had occurred.

**EXHIBIT 22(D):** letter from Plaintiff to Tuazon, date: May 22, 2006. Plaintiff

states that Judge is putting pressure on her to do something she feels unsafe

and which will place her at risk for developing further Posttraumatic Stress

symptoms, that of ordering Plaintiff to pick up her sandplay property at Walden

House. Plaintiff thus did comply with this order, duet to reasons of mental

safety and in order to protect herself from any further harassment from Walden

House. Plaintiff was basing this on the level of violence and severe harassment

had suffered from Gehr and certain Counselors.

Exhibit, letter from Bernadette, also verifies that certain Walden House managers

behaved in a violent manner towards employees, such as Defendant manager Gail

assaulting Bernadette, by dragging her in the rain. Bernadette felt like a hostage.

Bernadette is thus a set to Whitleblowing and Title VII violations from Defendant, as

Bernadette falls under a protected status. She was born in Austria, speaks with an accent. She whistleblowed regarding Defendant's falsifying of client charts to Gail and was Terminated and Blacklisted about a day later after she whistleblowed. Engaging in Protected activity and advocating for the client's rights and client's welfare by complaining about Fraud legally falls under classic whistleblowing activity. Bernadette also suffered severe depression months after this incident. Partner of Bernadette, Novia, has communicated to Plaintiff that she needed to physically hand feed Bernadette, who is not an invalid, is ambulatory and fairly young, after her violent Termination and assault from Gail. Plaintiff whistleblowed to Board of Psychology, also in the interest of Walden house Counselors, particularly Counselor Sonya Lister, who had not been trained in CPS reporting laws. Plaintiff wrote to Gavriel explaining that an employee could not be disciplined for not complying with these laws if they had not been trained in them, as was stated on the back of the CPS reporting form. Gehr had stated in a meeting with Plaintiff, Lister and Gretchen Richardson," Mardell has some concerns about Sonya not filing a CPS report." Plaintiff also whistleblowed regarding Gehr's harassment of Plaintiff, including threatening plaintiff with termination over a CPS report, in order to assist John F. Kennedy student trainees who were coming to do their traineeship at Walden House from John F. Kennedy University. J.F. K. University works with Zaslove and Zaslove supervises some of these students

Case No C 08-0894 PHJ                    Page 8 of 33

Plaintiff whistleblowed to Dean of J.F. K. Counseling Psychology program and to

Ethics and the law J.F. Kennedy professor Thomas Micahelles. **EXHIBIT 23**:

Letters from Plaintiff to John F. Kennedy University personnel, evidence of

whistleblowing, in interest of protecting students and clients. Plaintiff thus has

cause to state that Defendant's wrongful withholding of her property is Retaliation for

her whistleblowing activity to J.F. Kennedy university personnel, particularly since

this whistleblowing activity was occurring in 2006. Plaintiff also whistleblowed

to Medical Services Walden House Director regarding protecting the safety and

welfare of a client, before she was locked out of Walden House. Plaintiff

communicated to Director, that Walden Psychiatrist, Dr. Rose, was giving a very

dosage of medication to one of her clients, who was born in El Salvador. Client did

not want any medication. Plaintiff was documenting in her Medi-cal chart how she

was treating client with alternatives to medication, including cognitive behavior

therapy.


Thank you for your extra time and attention with this.


Dated: June 1, 2008                    Jane Rocio Evans,

                                       Jane Rocio Evans, MFT

                                       Licensed Marriage, Family Therapist

Jane Rocio Evans
P.O. Box 424886
San Francisco, CA 94142


JANE ROCIO EVANS, MFT

        Plaintiff,        Case No. 08-0894 PHJ

**REQUEST TO VACATE ORDER
DISMISSING COMPLAINT**

V

WALDEN HOUSE, INC.,

        Defendant


**EXHIBIT 24: Letter dated June 17, 2005, to Human resources personnel**

**Walden House.** Most important exhibit, please pay particular attention, as it verifies that

Whistleblowing occurred regarding the breaking of CPS Immunity law. Letter addresses

**Child Abuse and Neglect reporting Law: P.C. 11166.5 Immunity**. In the letter,

Plaintiff states" I am concerned as to whether Frank Gehr is also placing other

employee's written CPS reports in their employee files." Plaintiff whistleblows to HR in

this letter that she has witnessed Gehr *threatening Counselor Sonya Lister* (who is

African American, Gehr is Caucasian), with *Termination* by stating: "I want to see

whether you are fit for Walden House or not. What's this about your not wanting to file a

CPS report?" Mr. Gehr's Threat towards Lister is also racially discriminatory. In this

letter, Plaintiff also whistleblows to Human Resources at Walden House concerning

Gavriel *blaming* Plaintiff for breaking Confidentiality with a CPS report. Plaintiff states

that Confidentiality was broken, but that the Board of Behavioral Sciences states that

there is *no Privilege of Confidentiality in this matter.*" **Thus, plaintiff had not done**

Case No. C 08-0894 PHJ                              Page 2 of 33

**anything wrong and was suffering harassment and blame from both Gehr and**

**Gavriel.** When Plaintiff witnessed Lister being treated in a similar manner as herself, she

whistleblowed to HR regarding both Gehr and Gavriel.( Gavriel is Caucasian).  Since

Plaintiff's Lockout from Walden House occurs less than 2 months later after HR

received this letter, Plaintiff's Lockout can therefore be defined, legally, to Plaintiff's

understanding, as Retaliation for her whistleblowing regarding Gehr and Graviel and CPS

Immunity law. **EXHIBIT 25:** — Will submit later — J.R.E.

E-mail from Liz Willis, who has a Masters from Berkeley's Graduate School of Social

Work.  In this e-mail, Willis states that she has referred Plaintiff to EEOC for

Whistleblowing.  Plaintiff talked at length with Willis regarding CPS matter and Willis

gave this referral.  At this time, Willis was not aware of the micro cassette tape and other

events, which qualify this matter as racial discrimination.  Plaintiff states that the micro

casette recording given to the EEOC by itself is sufficient evidence for the EEOC to

conclude that racial discrimination has occurred from Gehr towards Plaintiff.

Plaintiff is thus seriously challenging the EEOC's claims that the results are inconclusive

for them to determine whether a Title VII has occurred.  Plaintiff claims that the EEOC

received more than enough evidence from Plaintiff to determine that whistleblowing,

overt racial discrimination and Retaliation had occurred in this matter. In addition,

Hightower knew about Gehr's refusal to allow Plaintiff to facilitate a Latino treatment

group one month before Lockout of Plaintiff. Hightower encouraged Plaintiff to 'have a

meeting with Gavriel regarding this." Plaintiff concludes that it would have been

Hightower's role as a Walden House manager to have communicated this racial

Case No. C 08-0894 PHJ                                    Page 3 of 33

discrimination of Gehr to Gavriel, since Gavriel was his Supervisor at the time.

Hightower agreed with Plaintiff at the time that this was racial discrimination from Gehr.

Thus Defendant was informed about this matter before Lockout of Plaintiff. In addition,

Latino employee Anthony from the REACH program is also a witness that Hightower

recommended that Plaintiff facilitate this group. Plaintiff also communicated to Smith

that Gehr was refusing to authorize Plaintiff to facilitate this group.

Respectfully,


Jane Rocio Evans,

Jane Rocio Evans, MFT

Licensed Marriage, Family Therapist                    Date: June 3, 2008

WALDEN HOUSE, INC.
## EMPLOYEE PERFORMANCE EVALUATION

EVALUATION DATE: 3 | 16 | 05      EMPLOYEE NAME: Rocio Evans

HIRE DATE: 12 - 4 - 03      POSITION: M.H. Therapist

SECTION 1 – GENERAL PERFORMANCE RATING:
1 = POOR    2 = SUBSTANDARD    3 = STANDARD    4 = ABOVE AVERAGE    5= SUPERIOR

| AREA | 1 | 2 | 3 | 4 | 5 | NOT APPLICABLE |
|---|---|---|---|---|---|---|
| **QUALITY OF WORK** Performance in meeting established standards accurately and effectively. | | | | | √ | |
| **QUANTITY OF WORK** Output of satisfactory work, efforts to improve effectiveness/efficiency. | | | | | √ | |
| **JOB KNOWLEDGE** Adequacy of all aspects of job and related self-development. | | | | √ | | |
| **INITIATIVE** Ability to work without supervision; resourcefulness. | | | | | √ | |
| **WORK ATTITUDE** Enthusiasm and interest in work. | | | | | √ | |
| **COOPERATION AND TEAM SPIRIT** Ability to work in harmony and effect on agency morale. | | | | | √ | |
| **ATTENDANCE** Regularity of attendance and punctuality. | | | | | √ | |
| **DEPENDABILITY** Acceptance of responsibility, follow through of assigned tasks. | | | | | √ | |
| **JUDGMENT** Correctness of decisions and logic; exercising discretion. | | | | √ | | |
| **LEARNING ABILITY** Speed and thoroughness of familiarizing, learning new tasks. | | | | | √ | |
| **WORK HABITS** Organization, thoroughness, timeliness and neatness. | | | | √ | | |
| **LEADERSHIP AND MANAGEMENT** (If applicable) Ability to guide and direct subordinates and manage resources. | | | NA | | | |
| **TOTAL checks in each column:** | | | 1 | 2 | 8 | Do not count checks in this column |
| **Multiply score for each column:** | X1 | X2 | X3 | X4 | X5 | |
| **TOTAL ratings for each column and add them up:** | | | 3 | 8 | 40 | Total → 4|

Divided by the number of checks: 11

Total score: 4.2

## SECTION 2 – NARRATIVE

GENERAL COMMENTS: Rocio is An Exceptional Staff member who has been able to come to clinical tasks = training, And effectiveness That has helped build a Stronger Mental Health team

B. SUCCESS IN FOLLOWING MONTHLY PROGRESS REPORT RECOMMENDATIONS: Rocio respons Effectively and promptly

C. OVERALL EMPLOYEE GROWTH AND STRENGTHS: learning more About Health Education = this population. Being able to facilitate 2 very needed support therapy groups.

D. AREAS NEEDING IMPROVEMENT: learning to " Speak up more" And give voice to Your Experience And speciality clinical Skills.

E. FURTHER TRAINING REQUIREMENTS: Continue As Career needs warrant –

## SECTION 3 – EMPLOYEE RESPONSE

This evaluation has been reviewed and discussed with me.  I understand the ratings, and I understand that I need not necessarily agree or disagree.  My comments are as follows:

I appreciate Frank Gher's efforts to Support my growth and progress in Walden House.

EMPLOYEE SIGNATURE: Rocio Sidome, MFT    DATE: 3-16-05

SUPERVISOR SIGNATURE: Frank C. Gher (sd)    DATE: 3/16/05

June 17, 2005

To Human Resources Personnel,

   I am writing to communicate to you that on Wednesday, June 15th I received a written document from my Administrative Supervisor Frank Gher regarding One to One Trainings. Enclosed is a copy of this document. Also, on June 17th, I received a telephone voice mail from Frank Gher in which he stated that he wanted me to sign this document and that, according to him, this document is not human Services Authorized and is to be kept Confidential from Human Resources.
I am bringing this Document to your attention at my earliest possible opportunity, in order that you be aware of this matter. I am also enclosing another document which I have signed, unknowingly, not knowing whether or not this document had been authorized by Human Resources. Frank Gher has also handed this document to other therapists which he administratively Supervises. I am bringing this document to your attention, again so that you are aware of this matter. It is possible that other employees have also unknowingly signed this document. I am requesting that you please investigate these matters.
   I am also requesting to know whether the second document, concerning medi-cal charts paperwork, has been placed in any one of my employee files by Frank Gher.
   A second matter concerns Child Protective Services Reports and Confidentiality. I first requested from Frank Gher during March 2005 that he give me a copy of what he had written concerning my interactions with the first client I filed a CPS report at Walden House. I have since requested a copy of this information from Frank Gher two more times and he has not given me a copy. My understanding is that it is my legal right as an employee to review any information which has been written about me in order to have the option of making any corrections which I want to make. It is also my understanding that it is one of my employee rights to have access to this information at the earliest possible opportunity. I am also requesting to be informed as to whether this information has been placed in any one of my employee files.
   On Wednesday, June 7 2005, I spoke with Frank Gher's Supervisor, Mardell Gavriel by telephone. Ms. Gavriel stated to me at this time that Frank Gher had been told by her to give me the CPS Booklet which explains CPS rules, Guidelines and legal codes for CPS Mandated Reporters. Frank Gher has never given me this booklet. I have requested and received this booklet by mail from CPS. Enclosed is a copy of the guidelines for employers and employees who are mandated reporters. As is stated in these guidelines, an employee cannot be harassed or interfered with from an employer for legally carrying out mandated Reporter responsibilities. Frank Gher has communicated to me that he has placed and is placing copies of the CPS reports I am currently submitting to CPS as a mandated Reporter in one of my employee files. I am requesting that you investigate as to whether he is also placing any copies of any other Mandated Reporter employee's CPS reports in any of their employee files. I am requesting that it be determined as to whether or not there is Differential Treatment occurring in this matter. I am also stating that I am experiencing the administrative handling of these CPS report matters by Frank Gher as Emotional Harassment. I am requesting that this situation also be looked into as to whether my CPS mandated reporting as an employee is being interfered with. I am also requesting that it be looked into as to whether I am being legally harassed by Frank Gher over this. My experience is that by these CPS reports being placed in my employee file, I am feeling intimidated as regards this process. I want to state, however, that this has not interfered with my complete compliance of my legal responsibilities as regards my filing CPS reports and carrying out these duties. I simply wish to state why I am feeling harassed over this.

   I wish to state that during an 815 Walden House meeting with some of the Walden House clinical staff present, I have felt harassed by Frank Gher concerning the first CPS reports I filed at Walden House. I have been told by Frank Gher:"The bottom line is that you wrote the client's name on this report."
I have communicated to Frank Gher in front of these staff members that" I felt blamed for not having done anything wrong concerning the writing and filing of this report." I have experienced this blame as harassment. Frank Gher has stated to me in a one to one meeting: "Now other people are thinking I did something wrong which I haven't done." I have communicated regarding this matter with the Board of Behavioral Sciences. An enforcement personnel has stated to me that I have not done anything illegal as regards this report. "There is no Confidentiality or Privilege in this matter," has been the statement made.

June 17 2005

To Human Resources Personnel, continued

**Child Abuse and Neglect Reporting Law- P.C. 11166.5: Immunity:** Any legally mandated reporter has immunity when making a report. In the event a civil suit is filed against the reporter, reimbursement for fees incurred in the suit will occur up to $50,000 (**P.C. Section 11172**) No individual can be dismissed, disciplined or harassed for making a report of suspected child abuse.
I now state that Frank Gehr has disciplined and harassed me for making a report of suspected Child abuse by taking disciplinary action and harassing me in the following manner: On March 25th, 2005, Frank Gehr stated to me concerning client Linda ~~Winfield~~'s CPS report which I reported to Child Protective Services: The bottom line is that you wrote this client's name on her written CPS report." This is disciplinary action. He stated this in a blaming tone of voice. I cannot be disciplined or harassed by any Supervisor concerning writing any client's name on any CPS report. Frank Gehr has also stated to me that he is keeping and placing a copy of client Linda W~~infield~~ and any other clients at Walden House which I file written CPS reports on in 'your employee file here in my office." ·
Again, this takes disciplinary action on his part. This is illegal.
     I have currently telephoned the Board of Behavioral Sciences concerning this Disciplinary action and harassment. It has been communicated to the Enforcement Branch at the BBS. I am in the process of filing a written report to the BBS concerning this disciplinary action. I feel that this is needs to be communicated to the BBS as it is a legal and ethical matter which the Board needs to be informed on.
     I am concerned as to whether Frank Gehr is also placing other employees Written CPS reports in their employee files. AT a staff meeting with former Counselor employee Sonya, myself, Frank Gehr and 890 Facility manager Gretchen, I witnessed Frank Gehr Supervisorly disciplining Sonya concerning the making of a CPS report in the following manner: at this meeting Frank Gehr stated to Sonya;"I want to see whether you're a fit for Walden House or not. What's this about you not wanting to file a CPS report?"
At a clinical Staff meeting in front of the 815 and 890 Walden House clinical staff, I stated the details of my interactions with Frank Gehr regarding the filing of CPS report regarding Walden House client Linda W~~infield~~. I stated at this time my feelings of being harassed by Frank Gehr. I stated that I felt blamed by Frank Gehr when I had acted in a completely professional manner regarding the making and filing of this report. Frank Gehr denied at this time that he had blamed me. Another clinical employee at this time, at this meeting stated to him:"When a person is wrong he should apologize."
     I also wish to state that Mardell Gavriel stated at a Walden House clinical staff meeting at Multi Services in front of the entire clinical staff present: "The main thing we are concerned about with the clinical staff concerns Confidentiality of CPS reports. Confidentiality was broken. This was unintentional, nonetheless it did happen." In the phone conversation with Mardell Gavriel on June 7th, 2005, I asked Mardell Gavriel what this statement meant and whether it concerned me. Mardell Gavriel stated to me that this statement was made concerning my filing of Linda W~~infield~~ CPS report. She stated that," again, your breaking of this client's Confidentiality was unintentional, but it did happen." This is also disciplinary action by Mardell Gavriel concerning my making and filing of a CPS report. Confidentiality was broken, but as stated by the Board of Behavioral Sciences, "There is no Confidentiality or Privilege in this matter."

In conclusion, I wish to state that I am concerned about any sudden and future false verbal warnings, false write-ups and a false firing or termination from Frank Gher. I am concerned about retaliation, due to his recent erratic behaviors.

Again, I am requesting a response from writing from you within the next 30 days.
I am open and willing to work towards resolution of this matter.

Respectfully,

Rocio Wong MFT

Rocio Evans,
Licensed Marriage, Family
Therapist

cc: Frank Gher
cc: Mardell Gavriel



## A Non-Profit Substance Abuse Treatment Organization

## T E R M I N A T I O N   S U M M A R Y

### CONFIDENTIAL

*No Reason Given written for termination — Rocio None NFt*

**DATE:**     August 3, 2005

**TO:**       Rocio Evans

**FROM:**     Lori Dorn, Human Resources Manager

**CC:**       Frank Gehr, Mental Health Services Coordinator
              Mardell Gavriel, Director of Mental Health Services
              Personnel file

This letter is to inform you that your employment with Walden House has been terminated as of August 3, 2005. Enclosed is your final check. You will receive information regarding your rights to continued benefit coverage (COBRA) under separate cover.

If you need to go to any Walden House facility in order to pick up personal belongings, you must make specific arrangements in order to do so. You may contact either Frank Gehr at 415/701-5118 or you may contact me at 415/355-2534 to make such arrangements.

We wish you well in your future endeavors.

circumstances, Walden House will release information in your personnel file to third parties, such as in response to (1) a request from a funding source auditor, (2) a subpoena, (3) a request for documents in a workers' compensation proceeding, or (4) a request for documents in a lawsuit brought by the employee.

If you wish to review your personnel file, you must give Walden House reasonable advance notice.  You may also request copies of certain documents in your file.

It is your responsibility to promptly notify the Human Resources Department of any changes in personal data, such as your name, address, telephone number, marital status, number of dependents, insurance beneficiaries, emergency contact, etc.

Walden House will respond to reference inquiries about you.  Such responses are limited to confirmation of the dates of your employment, your wage rates, and your positions held.  If you want Walden House to provide additional information regarding your employment, you must give Walden House written authorization to release additional employment information.

## EVALUATIONS AND SALARY REVIEWS

As a new employee, you are evaluated after your first 90 days of employment at Walden House.  Employees are also evaluated after their first six months of employment, and thereafter, annually, on the anniversary date of hire.  Evaluations are written and kept in your personnel file.  Your salary is reviewed in conjunction with your annual evaluation, on or around the anniversary date of your hire.

## PROMOTIONS

Walden House tries to fill positions by promotion from within whenever possible.  When a position becomes available, Walden House posts the position on facility bulletin boards.  If you are interested in a posted position, you should notify your supervisor.  In the event you apply for an available position, you must notify your supervisor of your application and make arrangements with your supervisor, if necessary, to ensure that the application process does not interfere with your present job duties.

## DISCIPLINE

Walden House's disciplinary actions include:

- oral warnings;
- written warnings;
- probation;
- suspension with or without pay; and

- discharge.

The nature of the discipline imposed will depend upon the seriousness of the problem and the employee's record of prior performance and behavior problems. Walden House has the right to determine what disciplinary action is appropriate based on the facts of each case. Not all forms of discipline are appropriate to each disciplinary situation, and it is not required that Walden House treat each form of discipline as a step in a series to be followed with an employee before discharge.

### IMPORTANT NOTICE

**WALDEN HOUSE'S PRACTICE OF EMPLOYEE DISCIPLINE DOES NOT CHANGE THE AT-WILL EMPLOYMENT RELATIONSHIP BETWEEN YOU AND WALDEN HOUSE**

### TERMINATION OF YOUR EMPLOYMENT

As discussed elsewhere in this handbook, Walden House can terminate, or you can terminate, the employment relationship at any time for any legal reason, with or without cause and with or without notice. Your employment may be terminated through any of the following actions:

- voluntary resignation;
- involuntary termination at the sole discretion of Walden House;
- retirement;
- reduction in force or reorganization;
- your failure to return to work at the end of a scheduled absence;
- your failure to report for work without notice for three work days; and
- prolonged disability, resulting in your inability to perform safely all of the essential functions of your job, with or without reasonable accommodation.

If you wish to resign, Walden House asks that you give two weeks advance notice. If you are a supervisor, Walden House asks that you give one month's notice, if possible. If you resign, you should submit a written statement that includes the effective date of your resignation and your reasons for leaving. Walden House may, at its sole discretion, pay you for all scheduled hours of work up to the noticed date of your termination or for a period of two weeks from the date of notice, and excuse you from coming to work during that time.

Separation Procedures. On the last day of work, you must return all Walden House property, such as files, pagers, car telephones, computers, supplies, keys, company credit cards, company membership cards, and other items. You may be asked to sign a document acknowledging the return of this property and receipt of

service and fail to make a timely application for
reinstatement to Walden House.

<u>Election Required</u>.  Health plan continuation coverage
is not automatic; you must elect it.

<u>Costs of Coverage</u>.  You are required to pay up to 100%
of the applicable premium for the health care
continuation coverage you choose.

<u>Exclusion and Waiting Periods</u>.  If health plan
continuation coverage for you or your spouse or
dependents is terminated by reason of service in the
military, no exclusion or waiting period will be
imposed in connection with the reinstatement of
coverage upon reemployment if the exclusion or waiting
period would not have been imposed had coverage not
been terminated by reason of your military service.

## AMERICANS WITH DISABILITIES ACT

Walden House complies with the provisions of the Americans With
Disabilities Act (the "ADA"), and in accordance with the ADA,
does not discriminate against qualified individuals with a
physical or mental disability in any aspect of the employment
relationship.  Walden House makes reasonable accommodations for
the known physical and mental limitations of applicants and
employees UNLESS such accommodation would cause an undue hardship
on Walden House's business operations.

Walden House also provides disabled individuals access to its
premises and services.

## POLICIES OF CONTRACTING AGENCIES

Walden House contracts with various federal, state and local
agencies.  Where any of the contracting agencies require Walden
House employees to abide by certain policies, you must abide by
those policies, as long as they are not contrary to law,
regardless of whether they are included in this handbook or
contradict policies included in this handbook.  Walden House will
inform you of any such agency policies.

## RESOLUTION OF WORK-RELATED CONCERNS/GRIEVANCE PROCEDURES

Walden House is committed to addressing your concerns through
open communication.  If there is something about your job that
bothers you or if you feel you have not been treated fairly or in
accordance with any company policy or procedure, Walden House
invites you to take advantage of its open door policy, described
below.

**Discussion with your supervisor.** You are strongly encouraged to raise work-related concerns with your immediate supervisor, who, hopefully, can resolve them. If, however, for some reason you feel you cannot raise a concern with your immediate supervisor, or feel your immediate supervisor has not adequately addressed your concern, you are encouraged to discuss the matter with the next level supervisor in your line of supervision with whom you feel you can discuss your concern. You may also bring the matter to the attention of Human Resources management personnel.

**Formal Written Complaint.** If you feel your supervisor has not adequately addressed your concern,, you may submit a written complaint to the Human Resources Department within five working days after the event at issue. Complaint forms may be obtained from the Human Resources Department. Upon receiving your complaint, personnel in the Human Resources Department will review it, and either investigate the underlying circumstances and attempt to resolve it, and/or submit the complaint to a personnel committee for investigation and resolution. A liaison to the committee will be appointed by the CEO from those employees who hold a Vice President position in the organization. The liaison will assist the Human Resources Department with the logistics of the process, when needed.

If you are not satisfied with a decision rendered by the Human Resources Department without committee consultation, you may submit the written complaint to a committee selected by the Human Resources Department; if you are not satisfied with the decision of the committee, you may submit the written complaint to the Chief Executive Officer, whose decision is final.

If your complaint is satisfactorily resolved, you may be asked to sign off on a written resolution.

We urge you to pursue work-related concerns until they have been resolved. Although we cannot guarantee that you will always be satisfied with the result, we will always explain how the result was reached.

You will not be disciplined or otherwise penalized for raising in good faith a work-related concern or for taking the appropriate steps to pursue the concern.

**SUGGESTION FORMS**

Suggestion forms are available at all Walden House facilities for input regarding all aspects of the workplace. Please use them often, anonymously or not, to offer ideas, praise, and constructive criticism.

Yahoo! My Yahoo! Mail   Make Yahoo! your home page

**Search the Web** [        ] Search

Mail Home - Mail Tutorials - Help

YAHOO! MAIL   Welcome, **rocioevans**
[Sign Out, My Account]



I know the secret to saving money on my life insurance! Do you?

Click here for a **FREE QUOTE!**

Save up to **70% today!** 10-Yr Level Term Life Insurance $500,000 Policy (monthly premiums)

age 35 40 45 50 55

| Mail ▾ | Addresses ▾ | Calendar ▾ | Notepad ▾ | **What's New** - **Mail For Mobile** - **Upgrades** - **Options** |



Check Mail   Compose   [          ]   Search Mail ▾   Search the Web

VONAGE: Save up to 50% on phone service

Previous | **Next** | Back to Messages

Delete   Reply ▾   Forward ▾   Spam   Move... ▾

| Folders | [Add - Edit] |
| --- | --- |
| **Inbox (376)** | |
| Draft | |
| Sent | |
| **Bulk (4)** | [Empty] |
| Trash | [Empty] |
| **My Folders** | [Hide] |
| resume | |

This message is not flagged. [ Flag Message - Mark as Unread ]   Printable View

**Date:**   Wed, 17 May 2006 18:19:47 -0400

**From:**   "MALINDA TUAZON" <MALINDA.TUAZON@EEOC.GOV>   ✎ Add to Address Book   📱 Add Mobile Alert

**To:**   "rocio evans" <rocioevans@yahoo.com>

**Subject:**   Re: Phone conference


See your credit score: $0


$200,000 Loan Only $771/Mo.!


Online Degree Programs


Listen to Radio On Yahoo! Music

Ms. Evans--

I will be available all day tomorrow if you have time either before or after your job interview to come in. Please notify me in advance when you expect to come so that I can appropriately inform our Front Desk. If you cannot come to the EEOC tomorrow, I will be available Monday 5/22 between 4 and 5:30 pm or all day Tuesday and Wednesday 5/30 and 31. Again, please confirm when you expect to visit the EEOC so that I can notify our Receptionist and keep my calendar clear.


Malinda Tuazon
Federal Investigator
Equal Employment Opportunity Commission
San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA 94105

(415) 625-5691 p
(415) 625-5675 f

>>> rocio evans <rocioevans@yahoo.com> 05/17/06 03:12PM >>>
To Ms.Tuazon, I will try to reach you as soon as I can by phone. I need to save my cell phone time for employers, as I currently have only $ 17 left before my first paycheck. Please e-mail me a good time during which I can meet with you in person at the EEOC office next week. I have a job interview tomorrow. I have currently run out of food stamp money and am in danger of going hungry again. I am also currently in danger of my landlord starting eviction proceedings on me


Yahoo!   My Yahoo!   Mail   Make Yahoo! your home page

**YAHOO! MAIL**   Welcome, **rocioevans**
[Sign Out, My Account]

Search the Web [          ] [Search]

Mail Home - Mail Tutorials - Help



Bad Credit Refinance for May 17
Get matched for free...up to 4 lenders in 60 seconds [Click here]
Comparison Shopping for Mortgages, Products, Travel, Cars & More

| Mail ▾ | Addresses ▾ | Calendar ▾ | Notepad ▾ | What's New - Mail For Mobile - Upgrades - Options |

[Check Mail]   [Compose]   [          ]   [Search Mail ▾]   [Search the Web]

VONAGE: Save up to 50% on phone service

**Folders**    [Add - Edit]

**Inbox (431)**
Draft
Sent
**Bulk (2)**    [Empty]
Trash    [Empty]

**My Folders**    [Hide]
resume

See your credit score: $0

Netflix-Try Free No Late Fees!

$200,000 Loan Only $771/Mo.!

Listen to Radio On Yahoo! Music

Previous | Next | Back to Messages

[Delete]  [Reply ▾]  [Forward ▾]  [Spam]  [Move... ▾]

This message is not flagged. [ Flag Message - Mark as Unread ]    Printable View

**Date:**   Mon, 22 May 2006 11:40:26 -0400

**From:**   "MALINDA TUAZON" <MALINDA.TUAZON@EEOC.GOV>   Add to Address Book   Add Mobile Alert

**To:**   "rocio evans" <rocioevans@yahoo.com>

**Subject:**   Re: important

Ms. Evans--

Congratulations on your job offer. Our office closes promptly at 4:30 and I will not be able to meet with you if you arrive after that. Please be sure that you are able to arrive by 4:30. If you do not believe you will be able to arrive prior to 4:30, please let me know so that we can reschedule our meeting.

Malinda Tuazon
Federal Investigator
Equal Employment Opportunity Commission
San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA 94105

(415) 625-5691 p
(415) 625-5675 f

>>> rocio evans <rocioevans@yahoo.com> 05/19/06 11:54AM >>>
To Ms. Tuazon, I got a job offer today, so I apologize, I might be late, able to come about 4:30 p.m. next Monday.I can meet from 4:30 to 5:30 p.m. I start my new job this Sunday. I wanted to communicate that the most important document I have submitted recently to you is the Court Order made by the Small Claims Court Judge in San Francisco. In it she orders me to go to Walden house at 520 Townsend Street, to pick up my Sandplay therapy tools and belongings at their Warehouse in person. This document puts much pressure on me and continues to seriously worry, distress and concern me. I have not received any written correspondence from the Honorable Judge since I wrote her back my response, which is that I feel unsafe and concerned about getting more PTSD symptoms if I were to go to Walden House to pick this up.

Yahoo! Mail - rocioevans@yahoo.com                                              Page 1 of 5



Yahoo!   My Yahoo!   Mail    Make Yahoo! your home page

  MAIL    Welcome, **rocioevans**
                              [Sign Out, My Account]

Search
the Web [                    ]  Search

Mail Home - Mail Tutorials - Help



| Mail ▼ | Addresses ▼ | Calendar ▼ | Notepad ▼ | What's New - Mail For Mobile - Upgrades - Options |

Check Mail    Compose    [                    ]    Search Mail ▼    Search the Web ▼

VONAGE: Save up to 50% on phone service

Previous | Next | Back to Messages

Delete    Reply ▼    Forward ▼    Spam    Move... ▼

**Folders**    [Add - Edit]

- Inbox (430)
- Draft
- Sent
- **Bulk (2)**    [Empty]
- Trash    [Empty]

**My Folders**    [Hide]

- resume

 See your credit score: $0

 Netflix-$5.99/mo. No Late Fees!

 $200K mortgage $771/mo. Refi

 Listen to Radio On Yahoo! Music

This message is not flagged. [ Flag Message - Mark as Unread ]    Printable View

**Date:**    Mon, 12 Jun 2006 18:17:37 -0400

**From:**    "MALINDA TUAZON" <MALINDA.TUAZON@EEOC.GOV>    Add to Address Book    Add Mobile Alert

**To:**    "rocio evans" <rocioevans@yahoo.com>

**Subject:**    Re: Schedule for meeting

Dear Ms. Evans--

Per the last email I sent to you, because I did not receive contact from you or your attorney by June 6, 2006, your case will now be forwarded for closure. You will be receiving a Notice of Right to Sue in federal court which you must exercise within 90 days from its issue date. This notice will be mailed to your 1230 Market St. address and should arrive no later than the end of the month. If you have not received it by then, please contact me and I will have it remailed.

Malinda Tuazon
Federal Investigator
Equal Employment Opportunity Commission
San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA 94105

(415) 625-5691 p
(415) 625-5675 f

>>> rocio evans <rocioevans@yahoo.com> 06/07/06 04:12PM >>>
to Ms. Tuazon, I just opened this e-mail. i don't have a computer and I have had a heavy work schelude recently. I am asking an attorney to review this letter next Saturday and some of the EEOC documentation I have submitted to your office. My respnses to you will be from attorneys. I insist and demand that you not close my case without first writing to my attorney in detail as to how and why specifically your investigation has been objective, through and serious. The Small Calims Court Judge has not yet ruled on this case, and I

have specifically requested that you wait for this information. I have submitted much information which verifies the racially discriminatory of this case, including letters from witnesses. My attroney will be in contact with your office, to examine in every detail the facts concerning the investigation of this case, including through and complete justification from your office as to why my case does not merit a letter. Until then, I am insisting and demanding that my case be kept open. I am claiming an invalid and unobjective investigation from the EEOC otherwise.  Respectfully, Ms. Rocio Evans, MFT

***MALINDA TUAZON <MALINDA.TUAZON@EEOC.GOV>*** wrote:

Ms. Evans--

The letter I mailed you on May 17, 2006 requesting that you contact me is a letter I sent because I was not able to contact you by phone. While I am very aware that you have contacted me numerous times by email, I was not certain whether you had consistent access to your email.  The letter was mailed as a backup measure.

In response to your concerns about Dr. Hightower, I am concerned that you did not understand the statement I made to you about my ability to contact him.  Because Dr. Hightower is a member of Walden House management, EEOC is not allowed to initiate contact with him *without notifying Walden House attorneys*, because, he is authorized to speak on behalf of Walden House.  However, the EEOC is allowed to interview any individual who initiates the contact, regardless of their status with a company.  Therefore, because I am aware you are so concerned about the veracity of statements being made under the auspices of the Walden House attorneys, I suggested you contact Dr. Hightower yourself and provide him with my contact information. Hopefully this clears up some of your concern.

With regard to meeting with me, there are several aspects of your case I would like to discuss with you, one of them being that the document reviews and witness interviews I have conducted up to this point are such that further investigation is unlikely to uncover discrimination as defined by the laws enforced by the EEOC. EEOC protocol prevents me from being able to list the specific reasons in writing.  You are welcome to bring anyone you wish to this meeting, or have your attorney call me herself on your behalf, but this contact needs to be made within a reasonable amount of time.  I will need to speak with either you or your attorney, in person or on the phone, about your case by **June 6, 2006,** or your case will be forwarded for closure.

Please contact me if you have any further questions or concerns.

Malinda Tuazon
Federal Investigator
Equal Employment Opportunity Commission
San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA 94105

(415) 625-5691 p
(415) 625-5675 f

>>> rocio evans <rocioevans@yahoo.com> 05/26/06 11:57AM >>>
To Ms. Tuazon, thank you for sending the scheludge. I am concerned,

Yahoo!  My Yahoo!  Mail   Make Yahoo! your home page



 **YAHOO! MAIL**   Welcome, **rocioevans**
[Sign Out, My Account]

Search
the Web [                    ]  [Search]

Mail Home - Mail Tutorials - Help

Refinance Rates   Bad Credit Mortgage   Home Equity Loans   NexTa
**Bad Credit Refinance**
Comparison Shopping for Mortgages, Products, Travel, Cars & More

| Mail ▼ | Addresses ▼ | Calendar ▼ | Notepad ▼ | **What's New - Mail For Mobile - Upgrades -** |
| | | | | **Options** |

[Check Mail]  [Compose]   [                    ]  [Search Mail ▼]   [Search the Web]

 VONAGE: Save up to 50% on phone service

Previous | Next | Back to Messages

[Delete]  [Reply ▼]  [Forward ▼]  [Spam]  [Move... ▼]

This message is not flagged. [ Flag Message - Mark as Unread ]     Printable View

| **Folders** | [Add - Edit] |
| **Inbox (432)** | |
| Draft | |
| Sent | |
| **Bulk (2)** | [Empty] |
| Trash | [Empty] |
| **My Folders** | [Hide] |
| resume | |

| **Date:** | Tue, 01 Nov 2005 20:28:58 -0500 |
| **From:** | "MALINDA TUAZON" <MALINDA.TUAZON@EEOC.GOV>  Add to Address Book   Add Mobile Alert |
| **To:** | rocioevans@yahoo.com |
| **Subject:** | EEOC charge #370-2005-02434 and 370-2005-02582 |

 See your credit score: $0

 Netflix-$5.99/mo. No Late Fees!

 Online Degree Programs

 Online Degree Programs

Dear Ms. Evans:

Per the request you left on Tina Bonaparte's voice mail, I am responding with an update of your case. I am the Investigator to whom your case has been assigned.  In your voice mail, you requested  a date when you could come to our San Francisco offices and review the responses sent to us by Walden House. You also stated that you had other documentation to provide.  You stated that you would make an effort to attend a meeting set by an EEOC Investigator.  Please notify me immediately if you are unable to attend a meeting on **Thursday, November 3, 2005 at 10:30 am**.  I realize this is on short notice, but I wanted to respond to the strong sense of urgency you conveyed in your message.  If I do not hear from you before 10:00 on Thursday, 11/3, I will assume that you can attend the meeting and will schedule my day accordingly. Please bring any further documentation you believe will contribute to your case with you to this meeting. If you need to contact me by phone you may call me at the number below.  Please feel free to contact me by telephone or email.  I appreciate your flexibility in the scheduling of this meeting.

Sincerely yours,


Malinda Tuazon
Federal Investigator
Equal Employment Opportunity Commission
San Francisco District Office
(415) 625-5691 p
(415) 625-5675 f

as I only have rent money paid until May 25th. As I sent as evidence, I am currently living in a Crack house, this is because this is the only rent I am able to afford. There is constant drug use, including heavy drug use by one of the Managers there. I have been threatened with eviction for "going to bed early, as your lifestyle will not fit with the travelers here who go to bed later," The managers refused to accept my rent money for the month of April 2006 due to this pretext. I reported them to the Rent Stabilization Board and was told in a letter in writing that this allegation was very serious. The managers terrorize the tenants here by writing such things as 'Tenants will get evicted for not washing their dishes,' "Tenants will get evicted for paying rent more than 3 days late.' A Manager recently asked me to tell him what belongings belonged to one of my dorm roomates, in order to throw these belongings out illegally. I was very upset to be used by one of the managers in this manner. I am highly distressed about living in this Crackhouse. This case is very well documented and I will also be sending you all of these documents soon, as strong evidence that I am suffering serious harm from being Locked out from Walden House.I had my own studio apartment on Van Ness Avenue, with nice hardwood floors and a quiet living situation before I was locked out of Walden House.I have photos of this apartment I can show you. Also, a very important document for you to review is that of the computer notes from the Employment Development Department. The last page states that my Unemeployment Insurance claim to Walden House consists of my having complained about my supervisor to his supervisor and been subsequently terminated. Please carefully note the date written by EDD personel regarding this claim.  David Pereki, Michael Smith, who are both male and Caucasian, also complained about their Supervisor, Frank Gehr, to both Mardell Gavriel, and Larry Nelson, who took notes regarding their complaints, during a similar time frame in which Icomplained. They both complained during July 2006.  They both were neither Terminated nor locked out for complaining. To my knowlededge, Michael Smith is still employed at walden House. David Pereki resigned with a good job reference from Lisa Zaslove. Ms. Zaslove authorized my Termination. I am writing a letter to the judge again, which I will fax you soon. Please e-mail me regarding what you need to contact me about.  Respectfully, Ms. Rocio Evans.

***MALINDA TUAZON <MALINDA.TUAZON@EEOC.GOV>*** wrote:

Ms. Evans--

I would like to speak with you regarding your cases agains Walden House. Please contact me as soon as possible. Because it is often difficult to contact me on the telephone, you may respond to my email to let me know some times that I would be able to call you. Please also provide a number to reach you at, as the numbers on file are no longer functioning.


Malinda Tuazon
Federal Investigator
Equal Employment Opportunity Commission
San Francisco District Office
350 The Embarcadero, Suite 500
San Francisco, CA 94105

(415) 625-5691 p
(415) 625-5675 f

July 1, 2006

Malinda Tuazon
Federal investigator
Equal Employment Opportunity Commission
350 The Embarcadero, Suite 500
San Francisco, CA 94105

Letter sent via Certified mail,
Return receipt requested

To Ms. Tuazon,

I am most definitely requesting for your office to have my Notice of right to sue in federal Court letter from the EEOC mailed to me at your very earliest convenience. Please mail this letter via certified mail to me, return receipt requested. I definitely want it. I have a right to Sue 90 days from the issue date on the letter, beginning during the month of July, since I have not yet received it.

I am submitting additional evidence to your office, Summary as follows:

Written evidence from Stephen M. kohn on Taping in whistleblowing cases as evidence. He is a national expert on whistleblowing discrimination. I am insisting that the micro cassette recording of Frank Gehr I submitted via certified mail to your office, which has been signed for, be submitted along with my letter to sue. It is my only copy and it is of utmost importance that it not be made available to Walden House as they might"accidentally" lose it or destroy it.

Evidence from a local San Francisco union stating that it is illegal for employers not to inform employees what their meetings with them are about. I am claiming a violation of my rights from the EEOC as regards filing my claim on August 9, 2005. During the filing of my claim with you, I explained to you that the reason for my refusing a meeting with Mr. Gehr and Ms. Dorn was because I had asked Mr. Gehr what the purpose of this meeting was, and he refused to answer me. You refused to write this on my claim, the effect making it seem as though I was being insubordinate with my supervisor, instead of asserting my employee rights. I am also claiming violation of my rights from the EEOC as I was filing my second claim with Walden House. The person filing my claim purposely omitted my charge of Walden House keeping my sandplay therapy belongings as retaliation on their part, for my having whistleblowed regarding racial discrimination. Even after consulting with her Supersior, she stated to me" The EEOC can't help you get your belongings back" She also told me to" come back another day." I felt harassed by the EEOC at this time.

Letter from mailbox 4U Manager Peter Robins Chu which verifies that I have had a stable mailing address where I have been receiving my mail as of September 13, 2005 to the present date. I moved out of the Van Ness apartment on September 14, 2005. Walden

House attorneys therefore can never claim that my final paycheck got lost through the mail.

E-mail from Patrick, witness, who referred me to the Human Rights Commission organization, for reasons of "discrimination,' according to his judgment and understanding. He stated to me at the time that his perceptions were that I had suffered gender discrimination from Mr. Gehr and he referred me to this organization.

Bank Statement from Union bank which shows that no check has been cashed by me from them during the month of May 2006. By August 10, 2006, this check will definitely be voided. Walden House still has not returned to me my final paycheck, even though they are intentionally aware of the harm suffered due to living situation.

Receipts that I was in room AC at Haight guesthouse, where Carla Thompson was at, therefore suffering significant endangerment of being susceptible to being the victim of a crime, through being stabbed with a kitchen knife by this individual. The front desk does not have 24 hour watch or staff and closes at 10 p.m. There would have been no one to intervene. Ms. Thompson also harassed me as much as Tenant Tim or more, but I used common sense by remaining quiet while in the dorm room with her. Tim was assertive and nearly got stabbed, a few weeks later.

Notes dated March 30, 2006 with Matt, worker for San Francisco Community Boards mediation service. During this meeting, Matt stated that Walden House had refused to come to a mediation meeting at community Boards with me, regarding sandplay therapy belongings He stated that Walden house felt mediation was unnecessary. He communicated to me: "Walden house wants to put the money in your hand if you come in a Taxi to their warehouse to get your belongings. You don't have to come alone. They want you to stay in the Taxi, while they load up your belongings."
I communicate to Matt about the letter I had recently received from the Judge. I stated to him that I felt unsafe coming to Walden house in a taxi. Matt stated:" They're putting pressure on the Judge." I communicate to Matt that I felt degraded and humiliated by the suggestion of Walden House to put the money in my hand to pay the Taxi. I felt as though Walden House was treating me like a sex worker. I explained to him that this was my experience of the situation.

Thank you for your time and attention,
Rocio Evans, MFT
1230 market Street #234
San Francisco, CA 94102

CC: Judge Dondero and Honorable Small Claims Court Judge
Cc: Lori Dorn, Human Resources manager, Walden House

August 29, 2005

To John F. Kennedy Director of Graduate School of Counseling Psychology,

I am writing in order to bring to your attention concerns I have regarding my experiences as an employee at Walden House, Inc. San Francisco., Facilities 890 West and 815. I am writing as a JFK alumni and also because I have recent concerns regarding the past and future safety of JFT students/trainees at Walden House.

I am no longer at Walden House, having been there from November 16, 2005 to August 9, 2005. On August 9, 2005, I was locked out of the 890 West Facility due to Racial Discrimination from Walden House Administration.

During my tenure there, I experienced scrutinization, particularly in the form of my Medi-Cal charts being constantly audited. This was inadvertently communicated to me in personal conversation and by telephone by the Mental Health Administrative Coordinator at Walden Hose, who audited my charts. I suffered emotional harm and traumatization from this scrutinization. I also witnessed other employees of color also being unnecessarily audited and scrutinized by administration and am concerned that an African American student/Intern from JFK may have been subjected to scrutinization during the time from September 2004 to May 2005. This, of course, would also constitute racial discrimination of this student.

In addition, the Administrative Supervisor of 890 West during March 2005 to August 9, 2005 violated CPS employee law by disciplining me for writing a client's name during my making of this client's CPS report. I was acting as a Mandated reporter at this time and complying with this legal obligation. I was told" The bottom line is that you wrote this client's name on a CPS report, You broke Confidentiality." I consulted with The Board of Behavioral Sciences and read the back of the most recent CPS report form. Board personnel from the BBS Enforcement Unit communicated to me that "Confidentiality was broken by writing the client's name on the report, but it is entitled to be broken, as you are a Mandated Reporter." Disciplinary action was taken by this Administrative Supervisor placing a copy of this client's report in my Walden House employee file. I saw this CPS report when I asked to see a copy of my employee file. In addition, I was threatened with termination and with" Insubordination" if I did not in the future write" Walden House Source" instead of any client's names on future CPS reports I made at Walden House. I informed administration and Human Resources that the CPS mandated reporting process was being interfered with. I informed administration that the consequences of this Walden House mandate could be that this could create an intimidating environment whereby the employee or the person writing a CPS report might have a difficult time writing, making these reports and thus complying with their responsibilities as mandated reporters, and that this could put these clients and their families in danger of not being assisted.

I kept getting told that I had "Broken Confidentiality." I was traumatized by this response. I am concerned now that the stage has been set for future JFK trainees/Interns to be legally harrrassed and disciplined by Walden House administration concerning the making of CPS reports. This situation has been left unresolved at this time.

In addition, I was harassed by Walden House Counselors at 890 West concerning the making of this client's report. This harassment was unintentional as these Counselors are not trainees or Interns and are not aware of BBS regulations. However, I was subjected to comments from these Counselors such as: "You just dropped a bomb on my back by telling me you are going to file a CPS report on my client," "I'm not going to talk to you about our client because you break Confidentiality," "You decide whether or not you're following Confidentiality," from a Counselor, said in front of other Counselors at a Counselor Staff Meeting. Again, this was done unwittingly on their part. However, it was supported by Administration as Walden House Administration did not take the time to adequately clarify these misconceptions and did not have adequate meetings with Counseling Staff in order to further build a bridge between Mental Health Staff and Counseling Staff. The one meeting held regarding these CPS concerns was addressed by my former Administrative

Supervisor, who as can be seen, acted in a Disciplinary and Harassing manner as regards this situation., and to my understanding, further confused this situation.

I am concerned that the trainees/interns coming in to Walden House from JFK University this September are likely to be subjected to similar forms of harassment concerning the making of CPS reports.

My professional recommendations as a licensed MFT for this situation are: That additional meetings be made in order to clarify and address these CPS concerns in which Counselors, Mental Health trainees/interns, House manager and Walden House Administration key staff be present. In particular, my understanding is that Ms. Lisa Zaslove, Psy D. be one of the key figures present in order to address these concerns, as she is an excellent clinician and has a good understanding of these issues, and is also Director of Training Program (Internship, Practicum and Traineeship). Ms. Zaslove is already informed of of these CPS concerns, as I communicated them to her during my tenure at Walden House.

In addition, it saddens me to also inform you that a female student/trainee suffered blatant/overt sexual harassment from one of the male staff at the Adolescent boys Facility, Walden House, during March 2005.

I communicated to Ms. Zalsove at this time that this sexual harrassment needed to be communicated by her to the Human Resources Manager at this time, as this individual had most likely acted out this predatory behavior in the past and would most likely continue this behavior in the future. Ms. Zalsove asked this individual to apologize to this student, which he did. However, my assessment is that this was a 'band aid solution', which aggravated the problem instead of solving it. The decision was made that this student could report this matter to HR herself. My understanding is that this placed an unnecessary burden on this student and that this role fell on administration.

Again, this raises questions in my mind as to whether trainees/interns are being adequately protected at Walden House, at this time. I also empathize with Ms. Zalsove, as of course this would be a very difficult situation for her.

Lastly, 2 weeks ago, The Walden House HR Manager sent a client, who is a House Driver, to serve papers inside a large envelope to me at my apartment on Van Ness. Fortunately I was not home to receive these papers at the time, but came home to see the envelope with writing on it which stated" hand deliver. Slip under the door." I promptly "Returned to Sender' this envelope without opening it. My understanding is that a sheriff serves a person, and that they are served legal documents, not documents from HR. I felt harassed and traumatized by this. I was also very concerned that a client had been sent to serve this, as this constitutes serious ethical violations of client's rights, both from the BBS and from CAMFT. This client is also now carrying the unnecessary psychological burden of having 'served' a therapist whom he saw at Walden House. Future students could witness this harassment of clients, and this would place them in a difficult position.

Again, I am asking you to assist in protecting the Safety of trainees/Interns at Walden House, as well as to assist me with clarifying my professional reputation as regards the CPS mandated reporting responsibilities at Walden House, as well as to look into the racial discrimination concern of having been audited and scrutinized. I am requesting this as support from you as a JFK alumni.

The other concerns are concerns which I feel are unethical for me not to bring to your attention. I am requesting that you look into these situations by contacting Ms. Zaslove at your earliest convenience and that you respond to me in writing that you have contacted this individual and addressed these CPS and Racial Discrimination concerns.

I can be reached at: 725 Van Ness Avenue, apt 403
San Francisco, CA. 94102

Respectfully,

Ms. Rocio Evans, MFT

 **JOHN F. KENNEDY UNIVERSITY**

INSPIRING DREAMS, REALIZING POTENTIAL.

GRADUATE SCHOOL OF PROFESSIONAL PSYCHOLOGY

July 31, 2006

Ms. Rocio Evans
1230 Market Street, #23
San Francisco, CA 94102

Dear Ms. Evans,

I am writing in regard to a series of messages that you left during the period of July 22 and July 29, 2006. Please be advised that as previously communicated to you by Diana Paque D.P.A., University Provost, you will need to have your attorney communicate directly in writing with her office. Any voicemail messages left at the Graduate School of Professional Psychology will be forwarded on to the Provost.

Sincerely,

Gail Kinsley-Dame, MA
Interim Dean
Graduate School of Professional Psychology

Cc:  Diana Paque, D.P.A.
University Provost

100 Ellinwood Way, Pleasant Hill CA  94523-4817  TEL: 925.969.3400  FAX: 925.969.3401  www.jfku.edu
1 West Campbell Ave., Bldg. A, Campbell CA  95008  TEL: 408.874.7720  FAX: 408.379.2977



■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Gail Kinsley-Dare
John F. Kennedy
Graduate School of Psych
100 Ellinwood,
Pleasant Hill, CA

A. Signature
X _Elpriego_                    □ Agent
                                □ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                 6/20/06

D. Is delivery address different from item 1?  □ Yes
   If YES, enter delivery address below:        □ No

3. Service Type
   □ Certified Mail    □ Express Mail
   □ Registered        □ Return Receipt for Merchandise
   □ Insured Mail      □ C.O.D.

4. Restricted Delivery? (Extra Fee)    □ Yes

2. Article Number
   (Transfer from service label)
   7005 2570 0000 6920 3161

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540